UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In Re: Child Victims Act Cases Removed
From State Court

**MEMORANDUM & ORDER**
23-CV-04741, 23-CV-04865, 23-CV-04862,
23-CV-04984, 23-CV-04993, 23-CV-05010,
23-CV-05095, 23-CV-05084, 23-CV-05098,
23-CV-05059

**HECTOR GONZALEZ**, United States District Judge:

Defendants in the cases referenced in the above caption have removed these cases from state court, pursuant to 28 U.S.C. § 1334, because Defendants are Roman Catholic parishes, schools, and other organizations related to the Diocese of Rockville Centre (the "Diocese"), which is the debtor in a Chapter 11 bankruptcy proceeding pending in the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). None of the Defendants in these cases are themselves debtors in that proceeding, and these lawsuits are not stayed pursuant to the Bankruptcy Code's automatic stay or, as further discussed below, otherwise enjoined by the Bankruptcy Court from proceeding.

The Plaintiffs in these cases assert solely state law claims, and Defendants have removed the cases to this Court based solely on the claims' connection to the Diocese's bankruptcy proceeding without asserting that federal question jurisdiction or diversity jurisdiction provides the Court with an independent basis to exercise jurisdiction over the cases. Plaintiffs have moved to remand each case back to state court, and Defendants have filed papers opposing that request.[1] Although the parties in most of these cases have filed only letter briefs addressing the

---

[1] There is a single case to which this order applies in which Defendants have not yet filed their letter in opposition to remand, and their time to do so has not yet passed: *PC-50 Doe v. St. Joseph Roman Catholic Church at Babylon, et al.*, No. 23-cv-5059. However, the Plaintiff in that case is suing the same religious order and school as in one of the Court's other cases, in

issue of remand, the Court warned the parties in each case that it "w[ould] likely take under consideration whether to remand this case based solely on the parties' letters, without affording Defendant[s] the opportunity further to brief the issue."

For the reasons set forth below, the Court finds that Plaintiffs' claims satisfy the criteria for mandatory abstention in 28 U.S.C. § 1334(c)(2), as well as the criteria for permissive abstention in 28 U.S.C. § 1334(c)(1) and equitable remand in 28 U.S.C. § 1452(b). The Court therefore remands these cases to the respective state courts from which they were removed.

## PROCEDURAL HISTORY

New York passed the Child Victims Act in February 2019. *See S.H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 176 (2d Dep't 2022).[2] Among other things, the Act provided "that civil actions brought by any person for physical, psychological, or other injury suffered as a result of conduct that would constitute a sex crime, that was committed against such person when they were less than 18 years of age, may now be commenced against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of such conduct up until the date the plaintiff reaches the age of 55," whereas the statute of limitations had previously began to run when a plaintiff turned 18 years old. *Id.* at 175. To address claims that had lapsed according to the prior statute of limitations, the Act created a two-year window in

---

which those Defendants are represented by the same counsel and have already filed their opposition to remand. *See ARK459 Doe v. Franciscan Brothers of Brooklyn, et al.*, No. 23-cv-5098. The Court sees no need to wait for the letter from Defendants' counsel in *PC-50 Doe* before deciding the remand issue because counsel for those Defendants have filed substantially the same letter in each of their cases pending before the Court.

[2] Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

which plaintiffs could commence their previously time-barred claims.  *Id.* at 175–76 (citing N.Y. C.P.L.R. § 214–g).

Plaintiffs commenced the cases at issue in this order in reliance on the Child Victims Act's revival window; the most recent abuse alleged in any of these lawsuits occurred in the mid-1980s.  Each lawsuit relates to alleged abuse committed by a person affiliated with the Catholic Church within the Diocese of Rockville Centre.  The Diocese itself is not, however, named as a Defendant in any of these cases.

The Diocese commenced a voluntary Chapter 11 proceeding in the Bankruptcy Court on October 1, 2020, identifying litigation expenses and the potential liability arising from lawsuits commenced under the Child Victims Act as its primary reason for commencing the proceedings.[3]  For several years, attorneys representing the Diocese and attorneys representing alleged victims of sexual abuse had consented to the Bankruptcy Court enjoining approximately 220 lawsuits commenced in state courts within this District from moving forward.  *See In re Roman Cath. Diocese of Rockville Centre, N.Y.*, 651 B.R. 622, 629 (Bankr. S.D.N.Y. 2023).  Eventually, however, the attorneys representing the alleged victims no longer agreed to the consensual injunction, and the Bankruptcy Court issued a decision that declined to extend the preliminary injunction any further.  *Id.* at 628, 630.  The preliminary injunction thus expired on June 15, 2023, at which point Defendants began removing these cases to this District.  *Id.* at 628.

When denying the Diocese's request for a preliminary injunction, the Bankruptcy Court confirmed that the Bankruptcy Code's automatic stay does not apply to state court lawsuits involving alleged abuse, such as the cases pending before the Court, in which the Diocese is not

---

[3]     John O. Barres, *A Letter to the People of God of the Diocese of Rockville Centre*, INFORMATION REGARDING DRVC REORGANIZATION (last visited Aug. 17, 2023), https://drvcreorganization.com/ (https://perma.cc/58UY-5K7U).

3

a party. *Id.* at 640.  The Bankruptcy Court recognized that Defendants are co-insureds with the Diocese pursuant to various different insurance policies, and that any damages for which Defendants might become liable through state court litigation could ultimately diminish the amount of insurance proceeds available to the Diocese.  *Id.* at 642.  The Bankruptcy Court held, however, that the Diocese's co-insured status did not bring these lawsuits within the scope of the automatic stay—even though Plaintiffs and Defendants' attorneys would need to make a motion in the Bankruptcy Court to lift the automatic stay to use the insurance policies to pay for any judgment or defense costs, respectively.  *Id.* at 644–45.

After confirming that the automatic stay did not apply to these cases, the Bankruptcy Court held that there was no basis to continue enjoining them from moving forward and, in doing so, rejected several arguments that the Diocese made in support of a preliminary injunction. First, the Bankruptcy Court held that Defendants' status as co-insured parties with the Diocese did not warrant an injunction because the Diocese's insurance proceeds were protected by the automatic stay, thereby preventing Plaintiffs from satisfying any judgments from the insurance proceeds unless the Bankruptcy Court lifted the stay.  *Id.* at 656.  Second, the Bankruptcy Court held that the Diocese had failed to demonstrate that a state court judgment against Defendants would lead to a viable claim for indemnification by Defendants against the Diocese pursuant to either contract or common law.  *Id.* at 657–58.  The Bankruptcy Court also rejected the Diocese's argument that, if the state court cases were allowed to proceed, a judgment against one of the Defendants could "result in inconsistent judgements, or create *res judicata* or collateral estoppel issues for the [Diocese]." *Id.* at 649, 660–62.

Shortly after Defendants removed these cases to this Court, the Diocese filed a motion in the U.S. District Court for the Southern District of New York to transfer these cases, along with

4

the approximately 210 other cases involving alleged abuse pending in this District, to the Southern District, pursuant to 28 U.S.C. § 157(b)(5). That statute authorizes a district court in which a debtor's bankruptcy proceeding is pending to "order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose." 28 U.S.C. § 157(b)(5). Accordingly, that statute provides Defendants with another avenue to federal court separate from the bankruptcy removal statute in 28 U.S.C. § 1452, which Defendants have relied upon to remove these cases to this Court. The Diocese's motion has been assigned to Judge Schofield in the Southern District, and it has not yet been fully briefed. It is unclear when that motion will be decided or what the outcome will be. Notwithstanding that uncertainty, Defendants have said that they removed these cases "to most efficiently allow for such a transfer" and have asked the Court to put off deciding whether the cases should be remanded until after the Southern District has decided whether to transfer the cases. ECF No. 11 at 2.[4]

## **LEGAL STANDARD**

Federal district courts have "original but not exclusive jurisdiction" over three types of proceedings related to Title 11 of the U.S. Code, otherwise known as the Bankruptcy Code: (a) cases "arising under" the Bankruptcy Code; (b) proceedings "arising in" a case under the Bankruptcy Code; and (c) proceedings "related to" a case under the Bankruptcy Code. 28 U.S.C. § 1334(b); *see In re Robert Plan Corp.*, 777 F.3d 594, 596–97 (2d Cir. 2015). A defendant may remove from state court any action that falls within the scope of that jurisdiction, so long as it is

---

[4] Unless otherwise noted, any citations to documents in this order by their "ECF No." refer to documents filed on the electronic docket in *Raia v. St. James Parish, et al.*, No. 23-cv-4865 (E.D.N.Y.). The parties, particularly Defendants, have made substantially the same arguments in each case and have, in some cases, filed nearly identical submissions addressing the issue of remand.

5

not "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." 28 U.S.C. § 1452(a). Since these cases involve only non-governmental litigants, that exception does not apply.

Cases that fall within either the "arising under" or "arising in" jurisdiction described above are referred to as "[c]ore proceedings." *Robert Plan Corp.*, 777 F.3d at 596. "Proceedings arising under the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law." *Id.* A court's "arising in" jurisdiction "covers claims that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).

A case that is not a core proceeding nevertheless falls within a court's "related to" jurisdiction if its "outcome might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018). "While 'related to' jurisdiction is not limitless, it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate." *Id.*

The difference between proceedings that are merely "related to" a case pending under the Bankruptcy Code and "core" Bankruptcy Code proceedings is significant because the former proceedings are subject to mandatory abstention if they satisfy the elements described in 28 U.S.C. § 1334(c)(2). *See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579–80 (2d Cir. 2011). These elements are: "(1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state

6

court." *Cipollone v. Applestein*, No. 20-cv-1614, 2022 WL 307051, at *2 (E.D.N.Y. Feb. 2, 2022).

Even if a party has commenced core bankruptcy proceedings in federal court—or removed them to federal court—courts may voluntarily abstain from hearing those proceedings under certain circumstances. Section 1334(c)(1) permits a court to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). Courts consider the following factors "[i]n deciding whether to permissibly abstain" under this section:

> (1) the effect or lack thereof on the efficient administration of the bankruptcy estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Osuji v. HSBC Bank, U.S.A., N.A.*, 580 B.R. 605, 612 (E.D.N.Y. 2018).

Section 1452(b) provides another basis for abstention that applies specifically to removed cases, allowing a federal court to remand claims to state court "on any equitable ground." 28 U.S.C. § 1452(b). The criteria for assessing equitable remand under 28 U.S.C. § 1452(b) and permissive abstention under 28 U.S.C. § 1334(c)(1) "are essentially the same and are often analyzed together." *Worldview Ent. Holdings, Inc. v. Woodrow*, 611 B.R. 10, 20 (S.D.N.Y.

7

2019). Nevertheless, when considering equitable remand, courts typically identify a slightly smaller list of relevant factors than when considering permissive abstention:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Anonymous #1 v. Kelsey*, No. 20-cv-1542, 2021 WL 4940997, at *4 (S.D.N.Y. July 19, 2021); *see also Aqua Shield, Inc. v. Brooks*, No. 13-cv-3008, 2013 WL 5781234, at *3 (E.D.N.Y. Oct. 24, 2013) (applying same factors). When a court considers applying permissive abstention or equitable remand to a core bankruptcy proceeding, however, it must consider these factors "[a]gainst the bedrock principle that federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'" *KeyBank, N.A. v. Franklin Advisers, Inc.*, 600 B.R. 214, 225 (S.D.N.Y. 2019) (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

## **DISCUSSION**

Defendants have demonstrated that Plaintiffs' claims are "related to" the Diocese's bankruptcy proceeding and, therefore, were permissibly removed to this Court. However, the criteria for mandatory abstention apply to these cases and are satisfied in each case. Additionally, even if these cases were not eligible for mandatory abstention, the Court would exercise its discretion permissively to abstain from exercising jurisdiction over the cases or, alternatively, to remand the cases to state court on equitable grounds.

### I. The Court Has "Related to" Jurisdiction Over Plaintiffs' Claims

As an initial matter, the Court must determine whether this case is a "core" Bankruptcy Code proceeding, or merely "related to" a case pending under the Bankruptcy Code and thus

subject to the mandatory abstention criteria described in 28 U.S.C. § 1334(c)(2). Notably, Defendants, in their notices of removal have asserted only that Plaintiffs' claims are "related to" the Diocese's bankruptcy and not that these cases involve any claims "arising under" the Bankruptcy Code or "arising in" the Diocese's bankruptcy proceeding. ECF No. 1 ¶ 9.

Even if Defendants' assertion of only "related to" jurisdiction has not waived any alternative jurisdictional basis, the Court independently concludes that these cases are not core proceedings for purposes of assessing the Court's bankruptcy jurisdiction under 28 U.S.C. § 1334. Plaintiffs' claims do not "arise under" the Bankruptcy Code because Plaintiffs assert only New York common law tort claims, rather than claims "created by federal bankruptcy law." *Goldman v. Grand Living II, LLC*, No. 21-cv-1028, 2021 WL 4033277, at *3 (E.D.N.Y. Sept. 3, 2021); *Tilton v. MBIA Inc.*, 620 B.R. 707, 720 (S.D.N.Y. 2020) (holding that plaintiff's "tort causes of action" did not arise under the Bankruptcy Code because they did not "rely on the Bankruptcy Code to exist"). Plaintiffs' claims also do not "arise in" the Diocese's bankruptcy proceeding because they are based on alleged misconduct committed by clergy and other individuals, who were allegedly within Defendants' control, decades before the Diocese's bankruptcy proceeding commenced. Such state law claims are not the type of claims that "would have no existence outside of the bankruptcy." *In re Purdue Pharms. L.P.*, 619 B.R. 38, 56 (S.D.N.Y. 2020) (holding that "arising in" jurisdiction did not exist over tort claims against non-debtor parties based on alleged conduct that preceded debtor's bankruptcy); *see also Roman Cath. Diocese of Rockville Centre, N.Y. v. Arrowood Indem. Co.*, No. 20-cv-11011, 2021 WL 1978560, at *5 (S.D.N.Y. May 17, 2021) (granting motion to withdraw bankruptcy reference and holding that contract claims based on interpretation of insurance policies that Diocese entered into prior to bankruptcy were not core proceedings).

Defendants are correct, however, that Plaintiffs' claims are "related to" the Diocese's pending bankruptcy proceeding. As explained above, the Second Circuit has held that "related to" jurisdiction applies whenever the outcome of a claim filed outside of a bankruptcy proceeding "might have any conceivable effect on" the estate of the debtor in the bankruptcy proceeding. *SPV Osus*, 882 F.3d at 339–40. This standard has been satisfied because Defendants are co-insured entities under the Diocese's insurance policies, and any damages for which Defendants might become liable could therefore diminish those insurance policies, which are the property of the Diocese's estate. Multiple courts within the Second Circuit have held that "related to" jurisdiction exists under similar circumstances. *See Canosa v. Ziff*, No. 18-cv-4115, 2018 WL 3642631, at *5–6 (S.D.N.Y. Aug. 1, 2018) (holding that claims against bankrupt company's directors were "related to" company's bankruptcy because directors intended to seek reimbursement from company's insurance policies); *MHS Cap. v. Goggin*, No. 16-cv-1794, 2016 WL 3522198, at *3 (S.D.N.Y. June 13, 2016) (holding that defendants' assertion "that certain of them may draw on [debtor]-owned insurance policies to cover defense costs" would "confer only 'related to' jurisdiction rather than 'arising in' jurisdiction"); *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, 496 B.R. 706, 710 (S.D.N.Y. 2013) (holding that "related to" jurisdiction existed because "[d]efendants can draw, and some currently draw, on [debtor]-owned insurance policies to cover defense costs, and may be able to draw on those policies to cover certain money damages").

## II.     Mandatory Abstention Requires Remand to State Court

Since the Court has only "related to" jurisdiction over Plaintiffs' claims, they are subject to the mandatory abstention criteria described in 28 U.S.C. § 1334(c)(2). The Court rejects Defendants' argument to the contrary, based on 28 U.S.C. § 157(b)(4), which provides that "[n]on-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be

subject to the mandatory abstention provisions of section 1334(c)(2)." The subsection referenced in that provision applies only to "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims *against the estate*." 28 U.S.C. § 157(b)(2)(B) (emphasis added). Since Plaintiffs have asserted claims solely against non-debtors, this exception to mandatory abstention does not apply. *See Desimone Hosp. Servs., LLC v. W. Va.-Am. Water Co.*, No. 14-cv-14845, 2015 WL 9244434, at *8 (S.D.W. Va. Dec. 17, 2015) (explaining that applying Section 157(b)(4) to preclude mandatory abstention for claims against non-debtors would be an interpretation "untethered from the plain text of the statute"); *Wingate v. Insight Health Corp.*, No. 13-cv-142, 2013 WL 1951897, at *4 (W.D. Va. May 10, 2013) (granting mandatory abstention and holding that "§ 157's abstention-exception [wa]s inapplicable" because plaintiff's claims against non-debtors were not claims "against the estate of [the debtor in bankruptcy]"). As explained above, the Bankruptcy Court has already held that these lawsuits are not actions against the Diocese's estate, to which the automatic stay would have applied. *Diocese of Rockville Centre*, 651 B.R. at 644–45.

In the cases on which Defendants rely to argue that this exception can apply to personal injury claims against non-debtors, the courts concluded that mandatory abstention could not apply because the non-debtors had a right to seek indemnification or contribution from the debtor. *See* ECF No. 11 at 2 (citing *Abbatiello v. Monsanto Co.*, No. 06-cv-266, 2007 WL 747804, at *3 (S.D.N.Y. Mar. 8, 2007); *Lalima v. Johnson & Johnson*, No. 19-cv-464, 2019 WL 2362362, at *8 (N.D.N.Y. May 24, 2019); *In re New England Compounding Pharm., Inc., Prods. Liab. Litig.*, 496 B.R. 256, 271–72 (D. Mass. 2013)). However, the Bankruptcy Court has already rejected the Diocese's argument that Defendants have a viable claim for indemnification against the Diocese. *Diocese of Rockville Centre*, 651 B.R. at 657–58. The Court agrees with

11

the Bankruptcy Court's analysis and, therefore, rejects Defendants' argument that these tort cases against non-debtors are categorically excluded from the mandatory abstention provision in 28 U.S.C. § 1334(c)(2).

Five of the six requirements for mandatory abstention clearly apply, and Defendants do not dispute them. *See* 28 U.S.C. § 1334(c)(2). Plaintiffs commenced these lawsuits in state court and assert solely state law claims. As explained above, Plaintiffs' claims trigger only "related to" bankruptcy jurisdiction and are not core bankruptcy claims. Defendants have not attempted in their notices of removal to invoke federal question or diversity jurisdiction as an alternative basis for removal. Even if any of the Plaintiffs, despite having lived in New York at the time they were allegedly abused, became a citizen of another state before commencing these lawsuits, Defendants have waived any potential assertion of diversity jurisdiction by not invoking diversity jurisdiction in their notices of removal. *See Tailored Fund Cap LLC v. RWDY, Inc.*, No. 20-cv-762, 2020 WL 6343307, at *7 (N.D.N.Y. Oct. 29, 2020) (remanding case removed pursuant to bankruptcy jurisdiction, despite defendant's argument that diversity jurisdiction also existed, because "a notice of removal may not be sustained on a ground of jurisdiction not stated in that notice"); *see also Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) (explaining that "removing defendant[s] ha[ve] the burden of establishing federal jurisdiction").[5] Finally, Plaintiffs have timely invoked mandatory abstention

---

[5] Specifically, in one case in which Plaintiff's complaint alleges that he is a citizen of Virginia, Defendant did not assert diversity jurisdiction in its notice of removal but has attempted to invoke it in Defendant's opposition to remand, which was filed more than thirty days after the Bankruptcy Court's injunction against removing the state court actions expired. *See Hensel v. St. Anthony of Padua Roman Cath. Church*, No. 23-cv-4993 (E.D.N.Y.) (ECF Nos. 1 & 10). This belated assertion of diversity jurisdiction is insufficient to preclude mandatory abstention because "it is well recognized that a removal petition, which is required to state the grounds for removal, cannot be amended substantively after the 30-day window for filing of the petition has closed." *IKB Int'l S.A. in Liquidation v. JPMorgan Chase & Co.*, No. 12-cv-4617, 2014 WL

because each Plaintiff filed a letter within just a few weeks of when each case was removed that "expressly argued that mandatory abstention applies." *Goldman*, 2021 WL 4033277, at *4.

Whether the Court must abstain from exercising jurisdiction over these cases, therefore, hinges on whether the cases "can be timely adjudicated[] in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). The Second Circuit has instructed courts to consider the following "[f]our factors" when "evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat*, 639 F.3d at 580. Weighing these factors is not as simple as asking "whether an action could be adjudicated most quickly in state court." *Goldman*, 2021 WL 4033277, at *4. Instead, "[a] state court . . . may still be a timely forum, even if it will require more time to adjudicate an action than a federal court, as long as the bankruptcy proceedings will not be hindered by the delay." *In re Miami Metals I, Inc.*, 625 B.R. 593, 601 (Bankr. S.D.N.Y. 2021).

---

2933043, at *2 (S.D.N.Y. June 27, 2014) (rejecting defendant's attempt to assert diversity jurisdiction as an alternative removal basis to bankruptcy jurisdiction); *see also CityView Towne Crossing Shopping Ctr. Fort Worth Tx. Ltd. P'ship v. Aissa Med. Res. L.P.*, 474 F. Supp. 3d 586, 600 n.2 (W.D.N.Y. 2020) (granting motion to remand case pursuant to mandatory abstention and rejecting as untimely defendant's assertion of diversity jurisdiction made for first time in opposition to remand); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (refusing "to permit [defendant] to amend its notice of removal" to allege diversity jurisdiction "beyond thirty days after [defendant] first received [plaintiff's] complaint"). Although the Second Circuit has authorized courts to overlook a "technical defect" in a notice of removal, such as the failure to cite a particular statute, so long as the notice otherwise "provide[s] the facts from which [the court's] jurisdiction can be determined," Defendant's omission of both the factual and statutory bases for diversity jurisdiction from its notice of removal in the *Hensel* case goes beyond a mere technical defect. *See Agyin v. Razmzan*, 986 F.3d 168, 180–81 (2d Cir. 2021).

13

The Second Circuit has expressly left undecided "which party should bear the burden" on these factors regarding timely adjudication. *See Parmalat*, 639 F.3d at 582; *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270 n.4 (2d Cir. 2012) (reiterating on subsequent appeal that the burden remained undecided). Multiple district court and bankruptcy court decisions have since concluded that the removing defendant bears this burden, consistent with the defendant's overall burden of establishing removal jurisdiction. *See, e.g., MHS Cap.*, 2016 WL 3522198, at *4; *Multibank, Inc. v. Access Glob. Cap. LLC*, 594 B.R. 618, 629 (Bankr. S.D.N.Y. 2018). The Court takes no position on this uncertainty because the timeliness factors counsel mandatory abstention regardless of which party bears the burden.

The four timeliness criteria collectively weigh in favor of abstention. Since neither party has presented evidence showing "the backlog of the state court's calendar relative to the federal court's calendar," the Court declines to "presume [that] one court's backlog is more manageable than the other's." *Goldman*, 2021 WL 4033277, at *4. Even if the state courts in which these cases were pending have a larger overall backlog than this Court, the Child Victims Act provided state courts with resources to facilitate the timely adjudication of cases like these, "including special trial preferences for cases revived pursuant to the [Act], specialized training for judges, and the promulgation of rules designed to promote rapid resolution." *In re Child Victims Act Cases Removed from State Court*, No. 23-cv-5029, 2023 WL 5123396, at *4 (E.D.N.Y. Aug. 10, 2023) (citing N.Y. C.P.L.R. § 3403(a)(7) & 22 N.Y.C.R.R. § 202.72) (remanding 42 Child Victims Act cases related to Diocese's bankruptcy pursuant to both mandatory and permissive abstention). In particular, the New York State Unified Court System has established rules requiring courts in each region of the state to establish "a dedicated part(s) . . . which shall be assigned all actions revived pursuant to [the Child Victims Act]," and setting target case

14

management timelines that require parties to complete discovery within one year of their first preliminary conference. 22 N.Y.C.R.R. §§ 202.72(1), (3). Since the alleged misconduct at issue in these cases happened so long ago—the most recent allegations involve misconduct that occurred in the mid-1980s—these rules and the expertise that judges in the state courts' specialized parts have developed are of pivotal importance to managing the cases effectively.

On the other hand, it would be inefficient to adjudicate Plaintiffs' claims in this Court. The Diocese's bankruptcy is not pending in this District, and this Court is no more capable than a state court judge of monitoring the docket for the Diocese's bankruptcy proceedings to decide how, if at all, those developments should impact the management of these cases. Whether these cases are adjudicated in this Court or state court will, therefore, make no difference to the cases' impact on the administration of the Diocese's bankruptcy estate.

The relative complexity of these cases also counsels in favor of litigating them in state court. If Plaintiffs were asserting typical tort claims, then this Court probably would not be called upon to address any uncertain issues of state law that would be better left for state courts to decide. However, cases involving tort claims covered by the Child Victims Act have already developed a significant body of law interpreting both the scope of the Act and its impact on the normal rules of civil procedure. *See, e.g.*, *Diocese of Brooklyn*, 167 N.Y.S.3d at 180 (interpreting interplay between Child Victims Act's revival provision and the CPLR's provision that borrows statutes of limitations from other states); *Schearer v. Fitzgerald*, 192 N.Y.S.3d 207, 210–11 (2d Dep't 2023) (addressing whether the revival provision of the Child Victims Act "violates the Due Process Clause of the New York and United States Constitutions"); *Fenton v. New York*, 183 N.Y.S.3d 529, 533 (2d Dep't 2023) (addressing the specificity of pleadings required for Child Victims Act claims, in light of the age of the revived misconduct, and how

15

such claims are impacted by pleading requirements established elsewhere in New York law); *Pisula v. Roman Cath. Archdiocese of N.Y.*, 159 N.Y.S.3d 458, 465–67 (2d Dep't 2021) (addressing the application of New York rules regarding "the striking of scandalous or prejudicial matter from pleadings" asserting Child Victims Act claims). The New York legislature made a calculated decision to revive these claims and assigned great importance to giving Plaintiffs their day in court. The New York courts therefore have a vested interest in developing this nascent body of law arising from the Child Victims Act in accordance with the legislature's intent.

The fact that the Diocese has filed a motion in the Southern District, pursuant to 28 U.S.C. § 157(b)(5), to transfer these cases to that district does not impact the Court's analysis about whether remand is proper. *See LG 37 Doe v. Nail*, No. 20-cv-217, 2021 WL 164285, at *1, *5 (W.D.N.Y. Jan. 19, 2021) (remanding claims against non-debtor to state court even though motion by debtor to transfer all claims to the District of Delaware was still pending). Section 157(b)(5) gives the district court where a bankruptcy proceeding is pending the authority to transfer to itself not only cases pending in federal court, but also cases pending in state court. *See In re Pan Am. Corp.*, 16 F.3d 513, 516–17 (2d Cir. 1994) (affirming district court's transfer of cases to itself from Florida state court); *In re Johnson & Johnson*, No. 19-cv-3531, 2019 WL 2497856, at *4 (S.D.N.Y. June 4, 2019) (explaining that District of Delaware would have authority to transfer cases to itself, pursuant to Section 157(b)(5), "regardless of whether they are in state or federal court"). Accordingly, if the Southern District ultimately decides to transfer these cases to itself, the Court's decision to remand these cases to state court in the interim will "ha[ve] no impact whatsoever" on the Southern District's ability to do so. *Johnson & Johnson*, 2019 WL 2497856, at *4.

16

### III. Permissive Abstention Also Justifies Remand to State Court

Even if mandatory abstention did not apply to Plaintiffs' claims, permissive abstention pursuant to 28 U.S.C. § 1334(c)(1), or alternatively equitable remand pursuant to 28 U.S.C. § 1452(b), are appropriate here according to the factors described above. "[T]he predominance of state law issues has been described as one of the more compelling reasons for abstaining." *Osuji*, 580 B.R. at 614. State law issues clearly predominate over any conceivable federal issues in this case because Plaintiffs assert solely state law claims. *See 47 E. 34th St. (NY), L.P. v. BridgeStreet Worldwide, Inc.*, No. 20-cv-9978, 2021 WL 2012296, at *10 (S.D.N.Y. May 20, 2021). This remains true even though the substance of Plaintiffs' common law claims may not be particularly complicated. State courts still "have the greatest interest in resolving issues of state law," even non-complex issues. *Anonymous #1*, 2021 WL 4940997, at *4.

Additionally, as described in the previous section, Child Victims Act claims have raised a wide array of substantive and procedural issues that the New York courts have a strong interest in addressing. *See Sokola v. Weinstein*, No. 20-cv-925, 2020 WL 3605578, at *17 (S.D.N.Y. July 2, 2020) (finding that permissive abstention and equitable remand applied because "[p]rinciples of comity and the local significance of the litigation under the CVA to the New York state courts weigh substantially in favor of returning the matter to those courts"); *LG 37 Doe*, 2021 WL 164285, at *5 (reaching the same conclusion for Child Victims Act claims against non-debtor scout master while bankruptcy of Boy Scouts of America was pending). The fact that the New York court system has established special pretrial parts that are specifically designed to manage Child Victims Act cases further highlights New York's interest in deciding these cases and its courts' ability to do so efficiently. *See* 22 N.Y.C.R.R. § 202.72(1); *see also Johnson & Johnson*, 2019 WL 2497856, at *3 (finding that equitable remand was appropriate

17

because New York County's Supreme Court had established a division "specifically to deal with" asbestos-related tort claims, for which there was "no equivalent in federal court").

## CONCLUSION

The Court grants Plaintiffs' motions to remand these cases to the state courts from which they were removed because, for the reasons set forth above, the Court must abstain from exercising jurisdiction and, alternatively, would exercise its discretion to abstain from exercising jurisdiction if mandatory abstention did not apply. Accordingly, the Court hereby orders that the following cases are remanded to the Supreme Court of the State of New York, Nassau County:

- *R.M. v. Saint Martha Roman Catholic Church*, E.D.N.Y. Docket No. 23-cv-4741, Nassau County Index No. 900044/2021;

- *Raia v. St. James Parish, et al.*, E.D.N.Y. Docket No. 23-cv-4865, Nassau County Index No. 900126/2021;

- *Nicol v. Our Lady of Lourdes, et al.*, E.D.N.Y. Docket No. 23-cv-4862, Nassau County Index No. 900128/2021;

- *Hensel v. St. Anthony of Padua Roman Catholic Church*, E.D.N.Y. Docket No. 23-cv-4993, Nassau County Index No. 900202/2021;

- *ARK663 Doe v. St. John of God, et al.*, E.D.N.Y. Docket No. 23-cv-5010, Nassau County Index No. 900345/2021;

- *ARK456 Doe v. St. Francis of Assisi, et al.*, E.D.N.Y. Docket No. 23-cv-5095, Nassau County Index No. 900093/2021; and

- *ARK459 Doe v. Franciscan Brothers of Brooklyn, et al.*, E.D.N.Y. Docket No. 23-cv-5098, Nassau County Index No. 900097/2021.

The Court further orders that the following cases are remanded to the Supreme Court of the State of New York, Suffolk County:

- *Scaringi v. St. Joseph Roman Catholic Church*, E.D.N.Y. Docket No. 23-cv-4984, Suffolk County Index No. 615122/2021; and

- *Johnson v. St. Patrick's Church*, E.D.N.Y. Docket No. 23-cv-5084, Suffolk County Index No. 610846/2021.

The Court further orders that the following case is remanded to the Supreme Court of the State of New York, Kings County:

- *PC-50 Doe v. St. Joseph Roman Catholic Church at Babylon*, E.D.N.Y. Docket No. 23-cv-5059, Kings County Index No. 510647/2021.

The Clerk of Court is respectfully directed to close these cases and to mail a copy of this order to the New York State Supreme Courts in Nassau County, Suffolk County, and Kings County.

SO ORDERED.

    */s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       August 17, 2023